UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
GLOBAL DETECTION AND : Civil Action No.: 08 Civ. 5441 (GEL)
REPORTING, INC., :
                            Plaintiff, :
                             : **DECLARATION IN OPPOSITION TO**
       -against- : **DEFENDANTS' MOTION TO DISMISS**
                             :
SECURETEC DETEKTIONS- :
SYSTEME AG and SECURETEC :
CONTRABAND DETECTION AND :
IDENTIFICATION, INC. :
                        Defendants. :
------------------------------------------------------X

      ROBERT S. BERNSTEIN, ESQ., declares the following to be true under penalties of perjury:

      1.     I am an attorney duly licensed to practice law in the State of New York and before this Court. I am a member of the law firm of McCarter & English, LLP, attorneys for Plaintiff Global Detection and Reporting, Inc. I submit this declaration in opposition to Defendants' motion to dismiss the second, third, and fourth causes of action asserted in Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).

      2.     Attached as Exhibit 1 is a copy of the August 20, 2007 agreement between Global Detection & Reporting and Team Ops LLC, which was acknowledged by Securetec AG.

      I declare that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: July 18, 2008

                                                      s/Robert S. Bernstein
                                                      ROBERT S. BERNSTEIN (RB 1509)

ME1 7542034v.1

**EXHIBIT 1**

ME1 7542034v.1

August 20, 2007

Mr. Mark Briggs
COO
Team Ops LLC
1 Patriot Place
Foxborough, MA 02035-1388

Dear Mark:

1. <u>Purpose</u>:

This sets forth the Agreement which has been reached between Team Ops LLC ("TeamOps") and Global Detection & Reporting ("GDR"), the purpose of which is to accomplish the prompt and successful commercial introduction of GDR's risk assessment methodology ("Services") using DrugWipe5 ("DrugWipes") surface detection tools in Maine, Vermont, New Hampshire, Massachusetts, Rhode Island and Connecticut, and such additional states that may be added upon agreement of the parties (the "Territories").

2. <u>Grant</u>:

Subject to the terms and conditions of this Agreement, GDR hereby grants to TeamOps the right to provide risk assessment methodology services using DrugWipes in the Territory. During the term of this Agreement, GDR will not sell Services to any other person in the Territory, nor to any person to GDR's knowledge that intends offer Services into the Territory and GDR will refer to TeamOps all inquires received by it for Services into the Territory.

3. <u>TeamOps Service</u>:

During the term of this Agreement TeamOps may offer Services to any company whose headquarters is located within the Territory regardless of whether the company has facilities within or without the Territory.

With respect to all said facilities located outside the Territory, TeamOps may provide Service or contract with GDR to provide same. TeamOps will not provide Services to any facility located within the Territory whose headquarters lie outside the Territory unless requested to do so by GDR, in each instance. Nor will TeamOps provide Services to any company, or person outside the Territory and TeamOps will refer to GDR all inquires received by it for Services or DrugWipes outside the Territory.

4. <u>Promotion</u>:

TeamOps will devote its best efforts to the promotion of the Services in the Territory and to their marketing and servicing of same, and TeamOps will give DrugWipes prominence in its promotional and advertising activities related to its drug detection services.



July 31, 2007
Page 2

5. <u>Purchase and Sale of DrugWipes</u>:

   (a) Within the term of this Agreement, the first month to commence on the date of this Agreement, TeamOps shall have no order commitments of DrugWipes. An order shall be deemed "placed" on the day same shall be received by GDR.

   (b) GDR shall, with reasonable diligence, fill all orders for DrugWipes, which shall be placed by TeamOps.

6. <u>Prices and Terms and Conditions</u>:

All purchases and sales of DrugWipes shall be made at, and on the following terms:

   (a) GDR's prices will remain "firm" until December 31, 2008. Thereafter, GDR will notify TeamOps in writing of all changes in such prices, terms or conditions at least thirty (30) days prior to the effective date of such changes.

7. <u>Pricing</u>:

   (a) TeamOps will pay the following prices per unit until December 31, 2008 based on cumulative purchase order quantities of DrugWipes ordered through such date.

| No. of Units Purchased | Price Per Unit |
|---|---|
| 001-20,000 | $33.50 |
| 20,000-50,000 | $31.00 |
| 50,001+ | $29.00 |

It is understood that the minimum single order size shall be 100 units.

   (b) Payment and delivery terms:

      (i) Paid on Delivery

      (ii) Delivery 30 days or sooner.



July 31, 2007
Page 3

    (c) TeamOps shall provide GDR with rolling quarterly projections of units to be ordered.

        (iii)    Should TeamOps not provide quarterly projections, GDR will accept orders and deliver as supply allows.

8.    <u>Term</u>:

The term of this Agreement shall extend until December 31, 2008- from the date hereof, and shall continue for a 6 month period to 6 month period thereafter, unless sooner terminated as hereinafter provided.

9.    <u>Termination</u>:

    (a)    Either party may, for any reason, terminate this Agreement as of the end of any period, referred to in paragraph (8), by giving the other party at least thirty (30) days' prior written notice thereof. In this regard the parties agree that if it is:

        (i)    TeamOps that terminates this Agreement without cause, TeamOps shall not, directly or indirectly, for a period of one (1) year thereafter, become employed by, or render drug assessment service to any person, corporation, partnership or other business entity that is in the business of selling risk assessment tools comparable to DrugWipes or Services; or if it is

        (ii)    GDR that terminates this Agreement without cause, TeamOps will receive a five percent (5%) commission for one (1) year thereafter (or such longer period if a TeamOps customer enters into a longer term purchase agreement during the term of this Agreement), with respect to all sales and/or service of Services in the Territory.

        (iii)    either party that terminates this Agreement, TeamOps shall be permitted to sell or provide Services utilizing its existing inventory of DrupWipes until such inventory has been exhausted, unless other arrangements are agreed between the parties.

    (b)    Notwithstanding any other provision of this Agreement, in the event of any breach of any material provision of this Agreement by either party, following written notice and a reasonable opportunity to cure such breach, the other party may terminate this agreement immediately by giving written notice thereof to the party in breach. No termination of this Agreement shall release either party from any obligation or liability theretofore accrued hereunder, but, apart therefrom, neither party shall be liable to the other by virtue of any termination of this Agreement for any compensation, reimbursement, expenditures, or

July 31, 2007
Page 4

    statutory or other indemnities; for any investments, leases, or other commitments; for any damages on account of the loss of prospective profits or anticipated sales; or for any other loss, damage, expense, or matter growing out of any such termination.

10.  <u>GDR, Securetec AG and TeamOps Names and Relationship</u>:

  (a) TeamOps will not use the name Global Detection & Reporting, Inc. in connection with the maintenance or operation of its business unless agreed to in writing prior to use. Nor will TeamOps (except in connection with its sales and Services hereunder) use the trademark DRUGWIPE or any other trademark of GDR or Securetec AG, all of which trademarks are and shall remain the exclusive property of GDR and/or Securetec AG but are licensed to TeamOps in connection with its sales and Services pursuant to this Agreement. Similarly GDR and Securetec AG will not use the name TeamOps unless agreed to in writing prior to use.

  (b) TeamOps will not use any words, perform any act, or make any statement, written or oral, which would imply or indicate, or tend to imply or indicate, (i) that TeamOps or its business is an agent or representative of GDR; an agency of GDR; or a division, subsidiary, or other branch of GDR; that GDR, in any manner, either directly or indirectly, owns, controls, maintains, or operates TeamOps or its business; (ii) that GDR is in any manner responsible or liable for TeamOps" obligations; or (iii) that any relationship exists between GDR and TeamOps, other than that of independent supplier and independent distributor.

11.  <u>Guaranty</u>:

GDR warrants that each DRUGWIPE sold hereunder will be free from defects in workmanship and materials. Such guaranty shall be in effect only during the twelve (12) months immediately following the date on which any such defective DrugWipe5 shall have been received by TeamOps. However, GDR's sole liability and obligation under such guaranty shall be to replace, free of charge, any such defective DrugWipes which shall be promptly returned to it, postage prepaid, following TeamOps' discovery of a defect.

Further, GDR represents and warrants:

  (i) That it is the exclusive distributor of DrugWipes surface detection tools and supporting risk assessment methodology in North America and the Caribbean for workplace, school, and retail markets;

  (ii) Has the right to appoint sub distributors;

  (iii) Securetec AG the owner of DrugWipes patented technology has confirmed GDR's appointment of TO as a distributor of DrugWipe

 

July 31, 2007
Page 5

        Services in the Territory; and

        (iv)    Securetec AG owns all trademarks, trade names and patents in connection with DrugWipes, and such trademarks, trade names and patents do not infringe upon anyone else's rights. GDR agrees to defend, indemnify and hold TeamOps harmless from and against all claims, costs, expenses, losses and damages in connection with a breach of any of its representations and warranties hereunder.

12.    **Dispute Resolution:**

    (a)    <u>Senior Management Discussions</u>. Each party agrees that it will not take action to institute formal resolution proceedings with respect to any dispute, controversy, or claim arising out of, relating to, or in connection with, this Agreement, until:

        (i)    It has given the other party written notice of its grievance;

        (ii)    The other party has failed to provide a prompt and effective remedy;

        (iii)    It has requested senior executives for both parties to meet and discuss the matter in order to consider informal and amicable means of resolution; and

        (iv)    Either such meeting failed to occur within thirty (30) days after such request or the meeting will not produce a mutually satisfactory resolution of the matter.

    (b)    <u>Arbitration</u>: Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, that cannot be settled through friendly discussion shall be settled through Arbitration pursuant to the Rules of the American Arbitration Association ("AAA"), as modified herein, upon application of either party. Unless otherwise agreed by the parties, the arbitration shall be a limited discovery arbitration conducted in New York County, New York before an arbitrator who is experienced and knowledgeable in the practices generally of the security industry. If the parties cannot agree on the appointment of the arbitrator within twenty (20) days of the arbitration application, such arbitrator shall be selected and appointed by the AAA upon application of either party.

    (c)    <u>Relief and Award</u>. Either party, before or during any arbitration, may apply to a court of competent jurisdiction in New York County, New York, for equitable relief where such relief is necessary to protect its interest pending completion of the arbitration. The costs and expenses of each arbitration hereunder and the apportionment between the parties will be determined by the arbitrator in his award or decision. Judgment upon any award of the arbitrator shall be



July 31, 2007
Page 6

    final, binding and conclusive, and may be entered upon the motion of either party in a court of competent jurisdiction New York County, New York.

13. <u>Miscellaneous</u>:

   (a)  Neither GDR nor TeamOps shall be held responsible for any loss or damage caused by any delay or failure to perform under this Agreement, when such delay or failure shall be due to strikes, differences with workmen or other labor disputes, war, insurrection, revolution, riots, commotions, disorders, accidents, inclement weather, acts of God, fires, floods, embargoes, governmental restrictions, inability to secure transportation facilities or materials, or any other cause beyond such party's control.

   (b)  In order to preserve the goodwill and consumer acceptance associated with DrugWipes and GDR's and TeamOps' names and trademarks, each party will, at all times during the term of this Agreement, in all respects, maintain and operate an efficient, well equipped, and well run business.

   (c)  In the event any material term or provision of this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, and either party shall determine that such invalidity, illegality, or unenforceability goes to the heart of this Agreement, then the other party shall have the right to terminate this Agreement by giving sixty (60) days' prior written notice thereof. In the event the aggrieved party shall not so terminate this Agreement, this Agreement shall continue in full force and effect, except that it shall be interpreted and construed as if such term or provision, to the extent the same shall have been held to be invalid, illegal, or unenforceable, had never been contained herein.

   (d)  This Agreement constitutes the entire agreement between GDR and TeamOps. Any former understandings, commitments, agreements, or representations between GDR and TeamOps, whether written or oral, are hereby cancelled.

   (e)  This Agreement is personal to both parties and is not assignable nor transferable by either party in whole or in part without the written consent of the other, and any attempt to assign or transfer this Agreement in whole or in part without such consent shall be void and of no effect.

   (f)  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument and all of which together shall constitute a single agreement.

   (g)  This Agreement shall not become effective until signed by both parties and countersigned by Securetec AG.



July 31, 2007
Page 7

Your countersignature of this letter agreement at the place indicated will signify agreement herewith as of the date first above appearing

Very truly yours,

Global Detection & Reporting

By: _____
T. Kyle Harris
COO

Accepted and Agreed:

TeamOps LLC

By: _MBriggs_

Title: _CHIEF OPERATING OFFICER_

Date: _August 30th 2007_

We hereby acknowledge the commitments made by Global Detection & Reporting ("GDR") and agree to support GDR's performance of its undertakings in accordance with the terms of this Agreement. We further acknowledge the validity of the representations and warranties made by GDR including TeamOps' license and right to use our trademarks, trade names and patents in connection with its performance of this Agreement. We agree to defend, indemnify and hold TeamOps harmless from and against all claims, costs, expenses, losses and damages in connection with a breach of any of GDR's or our representations and warranties hereunder. In the event that GDR ceases to maintain the rights necessary to perform its obligations during the term of this Agreement, we agree to contract directly with TeamOps for the remainder of the term at prices, quantities and payment terms no more onerous than those imposed by GDR hereunder.

Securetec AG

By: _____

Title: _____

Date: _____

MB

*following up our telephone conversation;*
*att: Kyle Harris*

August 20, 2007

Mr. Mark Briggs
COO
Team Ops LLC
1 Patriot Place
Foxborough, MA 02035-1388

Dear Mark:

1.   Purpose:

This sets forth the Agreement which has been reached between Team Ops LLC ("TeamOps") and Global Detection & Reporting ("GDR"), the purpose of which is to accomplish the prompt and successful commercial introduction of GDR's risk assessment methodology ("Services") using DrugWipe5 ("DrugWipes") surface detection tools in Maine, Vermont, New Hampshire, Massachusetts, Rhode Island and Connecticut, and such additional states that may be added upon agreement of the parties (the "Territories").

2.   Grant:

Subject to the terms and conditions of this Agreement, GDR hereby grants to TeamOps the right to provide risk assessment methodology services using DrugWipes in the Territory. During the term of this Agreement, GDR will not sell Services to any other person in the Territory, nor to any person to GDR's knowledge that intends offer Services into the Territory and GDR will refer to TeamOps all inquires received by it for Services into the Territory.

3.   TeamOps Service:

During the term of this Agreement TeamOps may offer Services to any company whose headquarters is located within the Territory regardless of whether the company has facilities within or without the Territory.

With respect to all said facilities located outside the Territory, TeamOps may provide Service or contract with GDR to provide same. TeamOps will not provide Services to any facility located within the Territory whose headquarters lie outside the Territory unless requested to do so by GDR, in each instance. Nor will TeamOps provide Services to any company, or person outside the Territory and TeamOps will refer to GDR all inquires received by it for Services or DrugWipes outside the Territory.

4.   Promotion:

TeamOps will devote its best efforts to the promotion of the Services in the Territory and to their marketing and servicing of same, and TeamOps will give DrugWipes prominence in its promotional and advertising activities related to its drug detection services.

July 31, 2007
Page 2

5. <u>Purchase and Sale of DrugWipes</u>:

   (a) Within the term of this Agreement, the first month to commence on the date of this Agreement, TeamOps shall have no order commitments of DrugWipes. An order shall be deemed "placed" on the day same shall be received by GDR.

   (b) GDR shall, with reasonable diligence, fill all orders for DrugWipes, which shall be placed by TeamOps.

6. <u>Prices and Terms and Conditions</u>:

   All purchases and sales of DrugWipes shall be made at, and on the following terms:

   (a) GDR's prices will remain "firm" until December 31, 2008. Thereafter, GDR will notify TeamOps in writing of all changes in such prices, terms or conditions at least thirty (30) days prior to the effective date of such changes.

7. <u>Pricing</u>:

   (a) TeamOps will pay the following prices per unit until December 31, 2008 based on cumulative purchase order quantities of DrugWipes ordered through such date.

| No. of Units Purchased | Price Per Unit |
|---|---|
| 001-20,000 | $33.50 |
| 20,000-50,000 | $31.00 |
| 50,001+ | $29.00 |

It is understood that the minimum single order size shall be 100 units.

   (b) Payment and delivery terms:

   (i) Paid on Delivery

   (ii) Delivery 30 days or sooner.

July 31, 2007
Page 3

(c) TeamOps shall provide GDR with rolling quarterly projections of units to be ordered.

    (iii)    Should TeamOps not provide quarterly projections, GDR will accept orders and deliver as supply allows.

8.    Term:

The term of this Agreement shall extend until December 31, 2008- from the date hereof, and shall continue for a 6 month period to 6 month period thereafter, unless sooner terminated as hereinafter provided.

9.    Termination:

(a)    Either party may, for any reason, terminate this Agreement as of the end of any period, referred to in paragraph (8), by giving the other party at least thirty (30) days' prior written notice thereof. In this regard the parties agree that if it is:

    (i)    TeamOps that terminates this Agreement without cause, TeamOps shall not, directly or indirectly, for a period of one (1) year thereafter, become employed by, or render drug assessment service to any person, corporation, partnership or other business entity that is in the business of selling risk assessment tools comparable to DrugWipes or Services; or if it is

    (ii)    GDR that terminates this Agreement without cause, TeamOps will receive a five percent (5%) commission for one (1) year thereafter (or such longer period if a TeamOps customer enters into a longer term purchase agreement during the term of this Agreement), with respect to all sales and/or service of Services in the Territory.

    (iii)    either party that terminates this Agreement, TeamOps shall be permitted to sell or provide Services utilizing its existing inventory of DrupWipes until such inventory has been exhausted, unless other arrangements are agreed between the parties.

(b)    Notwithstanding any other provision of this Agreement, in the event of any breach of any material provision of this Agreement by either party, following written notice and a reasonable opportunity to cure such breach, the other party may terminate this agreement immediately by giving written notice thereof to the party in breach. No termination of this Agreement shall release either party from any obligation or liability theretofore accrued hereunder, but, apart therefrom, neither party shall be liable to the other by virtue of any termination of this Agreement for any compensation, reimbursement, expenditures, or



July 31, 2007
Page 4

statutory or other indemnities; for any investments, leases, or other commitments; for any damages on account of the loss of prospective profits or anticipated sales; or for any other loss, damage, expense, or matter growing out of any such termination.

10. **GDR, Securetec AG and TeamOps Names and Relationship:**

   (a) TeamOps will not use the name Global Detection & Reporting, Inc. in connection with the maintenance or operation of its business unless agreed to in writing prior to use. Nor will TeamOps (except in connection with its sales and Services hereunder) use the trademark DRUGWIPE or any other trademark of GDR or Securetec AG, all of which trademarks are and shall remain the exclusive property of GDR and/or Securetec AG but are licensed to TeamOps in connection with its sales and Services pursuant to this Agreement. Similarly GDR and Securetec AG will not use the name TeamOps unless agreed to in writing prior to use.

   (b) TeamOps will not use any words, perform any act, or make any statement, written or oral, which would imply or indicate, or tend to imply or indicate, (i) that TeamOps or its business is an agent or representative of GDR; an agency of GDR; or a division, subsidiary, or other branch of GDR; that GDR, in any manner, either directly or indirectly, owns, controls, maintains, or operates TeamOps or its business; (ii) that GDR is in any manner responsible or liable for TeamOps" obligations; or (iii) that any relationship exists between GDR and TeamOps, other than that of independent supplier and independent distributor.

11. **Guaranty:**

GDR warrants that each DRUGWIPE sold hereunder will be free from defects in workmanship and materials. Such guaranty shall be in effect only during the twelve (12) months immediately following the date on which any such defective DrugWipe5 shall have been received by TeamOps. However, GDR's sole liability and obligation under such guaranty shall be to replace, free of charge, any such defective DrugWipes which shall be promptly returned to it, postage prepaid, following TeamOps' discovery of a defect.

Further, GDR represents and warrants:

   (i) That it is the exclusive distributor of DrugWipes surface detection tools and supporting risk assessment methodology in North America and the Caribbean for workplace, school, and retail markets;

   (ii) Has the right to appoint sub distributors;

   (iii) Securetec AG the owner of DrugWipes patented technology has confirmed GDR's appointment of TO as a distributor of DrugWipe



22/08/2007  17:04   00498962789652           SECURETEC AG                    S.    05/07

July 31, 2007
Page 5

      Services in the Territory; and

    (iv) Securetec AG owns all trademarks, trade names and patents in connection with DrugWipes, and such trademarks, trade names and patents do not infringe upon anyone else's rights. GDR agrees to defend, indemnify and hold TeamOps harmless from and against all claims, costs, expenses, losses and damages in connection with a breach of any of its representations and warranties hereunder.

12.  Dispute Resolution:

  (a) <u>Senior Management Discussions</u>. Each party agrees that it will not take action to institute formal resolution proceedings with respect to any dispute, controversy, or claim arising out of, relating to, or in connection with, this Agreement, until:

    (i) It has given the other party written notice of its grievance;

    (ii) The other party has failed to provide a prompt and effective remedy;

    (iii) It has requested senior executives for both parties to meet and discuss the matter in order to consider informal and amicable means of resolution; and

    (iv) Either such meeting failed to occur within thirty (30) days after such request or the meeting will not produce a mutually satisfactory resolution of the matter.

  (b) <u>Arbitration</u>: Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, that cannot be settled through friendly discussion shall be settled through Arbitration pursuant to the Rules of the American Arbitration Association ("AAA"), as modified herein, upon application of either party. Unless otherwise agreed by the parties, the arbitration shall be a limited discovery arbitration conducted in New York County, New York before an arbitrator who is experienced and knowledgeable in the practices generally of the security industry. If the parties cannot agree on the appointment of the arbitrator within twenty (20) days of the arbitration application, such arbitrator shall be selected and appointed by the AAA upon application of either party.

  (c) <u>Relief and Award</u>. Either party, before or during any arbitration, may apply to a court of competent jurisdiction in New York County, New York, for equitable relief where such relief is necessary to protect its interest pending completion of the arbitration. The costs and expenses of each arbitration hereunder and the apportionment between the parties will be determined by the arbitrator in his award or decision. Judgment upon any award of the arbitrator shall be

July 31, 2007
Page 6

> final, binding and conclusive, and may be entered upon the motion of either party in a court of competent jurisdiction New York County, New York.

13. <u>Miscellaneous</u>:

    (a) Neither GDR nor TeamOps shall be held responsible for any loss or damage caused by any delay or failure to perform under this Agreement, when such delay or failure shall be due to strikes, differences with workmen or other labor disputes, war, insurrection, revolution, riots, commotions, disorders, accidents, inclement weather, acts of God, fires, floods, embargoes, governmental restrictions, inability to secure transportation facilities or materials, or any other cause beyond such party's control.

    (b) In order to preserve the goodwill and consumer acceptance associated with DrugWipes and GDR's and TeamOps' names and trademarks, each party will, at all times during the term of this Agreement, in all respects, maintain and operate an efficient, well equipped, and well run business.

    (c) In the event any material term or provision of this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, and either party shall determine that such invalidity, illegality, or unenforceability goes to the heart of this Agreement, then the other party shall have the right to terminate this Agreement by giving sixty (60) days' prior written notice thereof. In the event the aggrieved party shall not so terminate this Agreement, this Agreement shall continue in full force and effect, except that it shall be interpreted and construed as if such term or provision, to the extent the same shall have been held to be invalid, illegal, or unenforceable, had never been contained herein.

    (d) This Agreement constitutes the entire agreement between GDR and TeamOps. Any former understandings, commitments, agreements, or representations between GDR and TeamOps, whether written or oral, are hereby cancelled.

    (e) This Agreement is personal to both parties and is not assignable nor transferable by either party in whole or in part without the written consent of the other, and any attempt to assign or transfer this Agreement in whole or in part without such consent shall be void and of no effect.

    (f) This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument and all of which together shall constitute a single agreement.

    (g) This Agreement shall not become effective until signed by both parties and countersigned by Securetec AG.

July 31, 2007
Page 7

Your countersignature of this letter agreement at the place indicated will signify agreement herewith as of the date first above appearing

Very truly yours,

Global Detection & Reporting

By:_____
T. Kyle Harris
COO

Accepted and Agreed:

TeamOps LLC

By:_____

Title:_____

Date:_____

We hereby acknowledge the commitments made by Global Detection & Reporting ("GDR") and agree to support GDR's performance of its undertakings in accordance with the terms of this Agreement. We further acknowledge the validity of the representations and warranties made by GDR including TeamOps' license and right to use our trademarks, trade names and patents in connection with its performance of this Agreement. We agree to defend, indemnify and hold TeamOps harmless from and against all claims, costs, expenses, losses and damages in connection with a breach of any of GDR's or our representations and warranties hereunder. In the event that GDR ceases to maintain the rights necessary to perform its obligations during the term of this Agreement, we agree to contract directly with TeamOps for the remainder of the term at prices, quantities and payment terms no more onerous than those imposed by GDR hereunder.

Securetec AG
By: _/s/_____
Title: CEO
Date: 21. Aug. 07