UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
GLOBAL DETECTION AND          :    Civil Action No.: 08-CIV-5441 (GEL/FM)
REPORTING, INC.,              :
                              :
         Plaintiff,           :
                              :    **AMENDED COMPLAINT AND**
    -against-                 :    **DEMAND FOR JURY TRIAL**
                              :
SECURETEC DETEKTIONS-         :
SYSTEME AG, SECURETEC         :
CONTRABAND DETECTION AND      :
IDENTIFICATION, INC., and     :
TEAMOPS, LLC.                 :
         Defendants.          :
-----------------------------------------------------X



Plaintiff GLOBAL DETECTION AND REPORTING, INC. ("GDR"), by its attorneys McCarter

& English, LLP, alleges as its Complaint against Defendants SECURETEC DETEKTIONS-

SYSTEME AG, SECURETEC CONTRABAND DETECTION AND IDENTIFICATION,

INC.(collectively "SECURETEC"), and TEAMOPS, LLC as follows:

### Nature of this Action: Jurisdiction of the Court

1.   This is a civil action to remedy torts and breach of contract between citizens of

different states where the amount in controversy exceeds the minimum jurisdictional

requirements of this Court.

### Parties

2.   Plaintiff GDR is a Delaware corporation, having its principal place of business at

36 West 25th Street, 16th Floor, New York, New York 10010.

3. GDR is engaged in the marketing, and exclusive North American and Caribbean distribution, of patented detection products (i.e., DRUGWIPE®) and related products which detect the presence of controlled substances.

4. Upon information and belief, Defendant SECURETEC DETEKTIONS-SYSTEME AG is a German corporation having a principal place of business at StartPoint Technologie Park, Eugen-Sanger-Ring 1, D-85649 Brunnthal, Germany.

5. Upon information and belief, Defendant SECURETEC CONTRABAND DETECTION AND IDENTIFICATION, INC., a subsidiary of SECURETEC DETEKTIONS-SYSTEME AG, is a Pennsylvania corporation with its principal place of business at 460 Market Street, #301, Williamsport, Pennsylvania, 17701.

6. Securetec is the owner of the patent(s) related to the DRUGWIPE® products and the sole source provider of the products at issue herein.

7. Upon information and belief, Defendant TEAMOPS, LLC ("Teamops") is a Delaware corporation with a principal place of business at One Patriot Place, Foxborough, Massachusetts, 02035.

## Jurisdiction and Venue

8. Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §1332, and jurisdiction supplemental thereto arises pursuant to 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over the Defendants, and venue is properly laid in this district, pursuant to 28 U.S.C. §1391(b), in that, upon information and belief,

Defendants are doing and transacting business within this judicial district, and have committed the acts complained of herein within this judicial district.

## Factual Background

10. Prior to and through May 2007, Securetec sought assistance in expanding its sales of patented surface detection products in the North American and Caribbean markets.

11. To that end, SECURETEC DETEKTIONS-SYSTEME AG, on its own behalf and on behalf of its subsidiary SECURETEC CONTRABAND DETECTION AND IDENTIFICATION, INC., entered into a distribution agreement dated May 31, 2007 (the "Distribution Agreement"), with GDR.

12. The Distribution Agreement expressly appointed GDR as Securetec's distributor for the marketing and sale of certain Securetec Products (the "Securetec Products") in the North American and Caribbean workplace, school, consumer direct and retail markets.

13. Additionally, the Distribution Agreement provided that, through at least June 30, 2008, GDR was to be Securetec's sole and exclusive distributor for the Securetec Products in the North American and Caribbean markets described. The Distribution Agreement also contemplated the extension of the sole and exclusive sales rights beyond June 30, 2008, provided that GDR either made a market exclusivity payment on or before that date, or facilitated a defined stock buy-back or stock purchase from Securetec by June 30, 2008.

14. Significantly, the Distribution Agreement provided that, with the exception of concluding certain identified and preexisting contracts, "Securetec will not deal or negotiate

directly with any customers in the Markets in the Territory [North America and the Caribbean] and Securetec will refer all orders received from such customers to GDR".

15.     Upon information and belief, at all times relevant hereto, Teamops was aware of the existence of the Distribution Agreement and aware of its material terms.

16.     At all times relevant hereto, GDR acted in good faith, fulfilled its obligations pursuant to the Distribution Agreement, and utilized its best efforts to expand the sales and distribution of the Securetec Products in the North American and Caribbean markets, and to provide additional services related to contraband detection and to expand the markets to which the Securetec Products are sold.

17.     In particular, by August 2007, GDR developed relationships with new customers, including by not limited to, Teamops, an entity previously unfamiliar with Securetec, to whom GDR introduced the Securetec Products, and with whom GDR discussed the material terms of sales of the Securetec Products in six states in North America, and the wider distribution and sales of the Securetec Products in North America by a national drug store chain.

18.     In addition to sales of the Securetec Products, GDR and Teamops entered into a written agreement, dated August 20, 2007, pursuant to which GDR and Teamops sought to achieve the commercial introduction of GDR's risk assessment methodology using the Securetec Products to markets in the United States.

19.     The August 20, 2007 agreement was signed by Securetec AG in an express acknowledgement of the commitments made by GDR therein, and in an explicit pledge to support GDR's performance of its undertakings in accordance with the terms of the agreement.

20. During the course of its discussions with Teamops, GDR shared with Securetec the confidential details of its negotiations with Teamops, including, but not limited to pricing information, market strategy and profitability projections (the "Confidential Information").

21. Thereafter, in direct contravention of the explicit and unambiguous terms of the Distribution Agreement, Securetec, to the exclusion of GDR, met and privately negotiated with Teamops for sales of the Securetec Products.

22. Teamops participated in and encouraged such negotiations despite being aware that its private negotiations with Securetec violated the terms of the Distribution Agreement.

23. During the aforementioned negotiations, Securetec entered into direct and unfair competition with GDR by utilizing the Confidential Information and, *inter alia*, offering Teamops more desirable terms than those previously offered by GDR.

24. After, and as a direct result of, Securetec's direct negations with Teamops, Securetec usurped GDR's rights pursuant to the Distribution Agreement and deprived GDR of the benefits of the Distribution Agreement and its negotiations with Teamops.

## FIRST COUNT
### (Breach of Contract against Securetec)

25. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

26. At all times relevant hereto, the Distribution Agreement was in full force and effect.

ME1 7553950v.1

27. At all times relevant hereto, GDR fulfilled its obligations under the Distribution Agreement.

28. Securetec breached the terms of the Distribution Agreement by, among other things, dealing directly with Teamops and competing directly with GDR in the markets and territory granted to GDR by the Distribution Agreement.

29. As a result of the foregoing, GDR has been damaged in an amount to be determined at trial, but in no event less than Two Million Five Hundred Thousand Dollars ($2,500,000.00).

## SECOND COUNT
### (Breach of Implied Covenant against Securetec)

30. GDR repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

31. GDR's relationship with Securetec and, in particular, the Distribution Agreement created an implied covenant of good faith and fair dealing between GDR and Securetec.

32. Securetec breached this implied covenant by competing with GDR in a market and with a customer(s) that Securetec had expressly granted GDR exclusive rights to. In so doing, Securetec acted unfairly, in bad faith, and utilizing improper means. Securetec's actions frustrated not only GDR's attempts to distribute the Securetec Products, but also its efforts to achieve the commercial introduction of its risk assessment methodology.

33. Securetec's conduct in this regard damaged GDR's business, reputation and relationship with Teamops.

34. As a result of the foregoing, GDR has been damaged in an amount to be determined at trial, but in no event less than Two Million Five Hundred Thousand Dollars ($2,500,000.00).

### THIRD COUNT
### (Unfair Competition against Securetec)

35. GDR repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

36. Based on the facts alleged in this Amended Complaint, Securetec acted in bad faith to misappropriate the skill, expenditures, and labor of GDR.

37. Pursuant to the terms of the Distribution Agreement, the North American market, and the customers developed by GDR for the Securetec Products belonged exclusively to GDR.

38. Securetec's direct contact with Teamops, and wrongful use of the Confidential Information usurped GDR's exclusive relationship with Teamops.

39. As a result of the foregoing, GDR has been damaged in an amount to be determined at trial, but in no event less than Two Million Five Hundred Thousand Dollars ($2,500,000.00).

### FOURTH COUNT
### (Tortious Interference with Prospective Economic Advantage against Securetec)

40. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

7

ME1 7553950v.1

41. GDR established business relations with Teamops including, but not limited to, entering into a written agreement dated August 20, 2007, the purpose of which was to accomplish the prompt and successful commercial introduction of GDR's risk assessment methodology using the Securetec Products.

42. Securetec interfered with GDR's business relations with Teamops by, *inter alia*, negotiating with Teamops in secret and to the exclusion of GDR, and, usurping GDR's relationship with Teamops.

43. Securetec utilized confidential and proprietary information obtained from GDR to wrongfully interfere with GDR's business relationship with Teamops.

44. As a result of Securetec's intentional interference with GDR's relationship with Teamops, GDR's relationship with Teamops was damaged.

45. But for Securetec's interference, GDR would have entered into further contractual relationships with Teamops.

46. As a result of the foregoing, GDR has been damaged in an amount to be determined at trial, but in no event less than Two Million Five Hundred Thousand Dollars ($2,500,000.00).

## FIFTH COUNT
**(Tortious Interference with Contract against Teamops)**

47. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

ME1 7553950v.1

48. At all times relevant hereto, the Distribution Agreement constituted a valid contract between Securetec and GDR.

49. At all times relevant hereto, Teamops had knowledge of the existence of the Distribution Agreement and its material terms including, but not limited to, its exclusivity provisions.

50. Teamops intentionally procured Securetec's breach of the Distribution Agreement by, *inter alia*, pursuing direct negotiations with Securetec.

51. But for Teamops unlawful actions, Securetec would have performed its obligations pursuant to the Distribution Agreement.

52. As a result of the foregoing, GDR has been damaged in an amount to be determined at trial, but believed to be no less than Five Million Dollars ($5,000,000.00)

WHEREFORE, Plaintiff GLOBAL DETECTION AND REPORTING, INC., prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A. Entering a permanent injunction enjoining Securetec, its respective officers, directors, employees, agents, subsidiaries, affiliates, distributors, dealers, and all persons in active concert or participation with Securetec from selling or distributing the Securetec Products in the North American and Caribbean workplace, school, consumer direct and retail markets for a period of not less than one year, and thereafter to the extent that GDR continues to abide by the terms of the Distribution Agreement, and from otherwise unfairly competing with GDR,

misappropriating that which rightfully belongs to GDR, or usurping opportunities and markets developed by GDR;

B. Requiring that Securetec direct any workplace, school, consumer direct and retail market customers in North America or the Caribbean who are interested in the Securetec Products to GDR;

C. Ordering Securetec to file with the Court and serve on counsel for GDR within thirty (30) days after judgment, a report in writing and under oath, setting forth in detail the manner and form in which Securetec has complied with the Order;

D. Requiring Securetec and Teamops to account to GDR for profits and reimburse GDR for actual damages suffered by GDR as a result of Securetec's breach of contract, unfair trade practices, and misappropriation;

E. Ordering Securetec and Teamops to pay GDR for all of its litigation expenses including the costs of this action and reasonable attorneys fees; and/or

F. Such other relief as may be appropriate in equity and good conscience.

### JURY DEMAND

GDR hereby demands a jury trial on all issues so triable.

Dated: New York, New York
July 22, 2008

McCARTER & ENGLISH, LLP

By: /s/ Robert S. Bernstein
Robert S. Bernstein (RB-1509)
A Member of the Firm
Attorneys for Plaintiff Global Detection and Reporting, Inc.
245 Park Avenue
New York, New York 10167
(212) 609-6800

ME1 7553950v.1